UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
RON VANSERTIMA,

               Plaintiff,

- against -

DEPARTMENT OF CORRECTIONS, OFFICER—
BROWN, MITCHEL, TRANSPORTATION,
DEPARTMENT OF HEALTH, WARDEN AND
COMMISSIONER

               Defendants.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**

10 CV 3214(RJD)(RER)

DEARIE, District Judge.

Plaintiff, a *pro se* prisoner housed on Riker's Island ("Riker's") at the time he filed his complaint, alleges that defendants were deliberately indifferent to his medical needs.[1] Because even under a liberal reading of the complaint plaintiff fails to allege a plausible denial of adequate medical care, sufficiently serious injury, or deliberate indifference, plaintiff's complaint is dismissed. Fed. R. Civ. P. 12(b)(6).

## I. REQUEST FOR APPOINTMENT OF COUNSEL

Prior to turning to the merits of plaintiff's claim, the Court first addresses and ultimately denies plaintiff's request for appointment of counsel. On April 18, 2011, defendants served plaintiff with its motion to dismiss, along with instructions about the Court's deadlines and how to proceed. ECF Docket # 28. Although plaintiff's opposition was due on May 31, 2011, plaintiff

---

[1] Although plaintiff claims that his rights under the Eighth Amendment are implicated, it is unclear from his pleadings whether at the time of the alleged incident, he was imprisoned post-conviction for the Eighth Amendment to apply or detained pre-trial. The question is immaterial to the adjudication of the instant matter, however, for although "a claim for indifference to the medical needs of . . . a pretrial detainee in state custody . . . [is] properly brought under the Due Process Clause of the Fourteenth Amendment," the same standards apply and case law is used interchangeably. Caiozzo v. Koreman, 581 F.3d 63, 69-72 (2d Cir. 2009) (adopting same standards "irrespective of whether [claims] are brought under the Eighth or Fourteenth Amendment.").

submitted no opposition to defendants' motion to dismiss. On January 6, 2012, the Court directed defendants to file proof of service of their motion to dismiss. ECF Docket # 32. The defendants responded that same day with proof of service. ECF Docket # 33. On January 24, 2012, the Court received a letter from plaintiff informing the Court that he had "never received anything from the court ordering me to submit an opposition" and requesting both "an extension" and a copy of defendants' motion. ECF Docket # 34. On January 26, 2012, "out of an abundance of caution," the Court granted plaintiff's request and extended his filing deadline to February 21, 2012. ECF Docket # 35. In so doing, the Court made clear that if plaintiff "fail[ed] to submit any opposition by February 21, 2012, the Court w[ould] decide defendants' motion to dismiss based solely on the motion papers already before it." Id. Plaintiff did not respond by February 21, 2012 as instructed. Instead, on February 27, 2012, the Court received an undated letter from plaintiff, which stated that he had received defendants' motion and requested that the Court appoint counsel. ECF Docket # 36.

It is well-settled that there is "no requirement that an indigent litigant be appointed *pro bono* counsel in civil matters, unlike most criminal cases." Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994). Although the Court is given discretion under 28 U.S.C. § 1915(e)(1) to "request an attorney to represent any person unable to afford counsel," appointment of counsel is discouraged where there is no "threshold showing of some likelihood of merit." Cooper v. A. Sargenti Co., 877 F.2d 170, 172, 174 (2d Cir. 1989) (observing that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause"). "Only if the claim meets this threshold [merit] requirement, the court should then consider other criteria," Id. at 172 (internal quotation marks omitted), which include . . .

2

> . . . the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Johnston v. Maha, 606 F.3d 39, 42 (2d Cir. 2010) (quoting Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986)). In considering whether to appoint counsel in this case, the Court has reviewed plaintiff's complaint, its numerous attached exhibits, and defendants' motion papers. The Court declines to do so because—as will be discussed shortly—plaintiff's claim does not meet the "threshold requirement" of "some likelihood of merit." Cooper, at 172, 174.

Moreover, the other prudential considerations weigh against appointment of counsel in this case. First, plaintiff has demonstrated that he was more than able to "investigate the crucial facts": plaintiff appended twenty-two pages of evidence, including copies of medical grievance forms and seventeen doctors' reports, to his complaint and set forth the pertinent facts in a clear and concise manner. Second, there is no "conflicting evidence" in this case: the vast majority of plaintiff's exhibits are the Department of Corrections' own forms and any conflicting factual accounts are immaterial to the Court's ultimate determination. Third, the legal issues presented are relatively straightforward: indeed, attached to his complaint, plaintiff includes a thorough statement of Eighth Amendment medical indifference jurisprudence.

For the foregoing reasons, plaintiff's request for the appointment of counsel is denied. The court now proceeds to the merits of plaintiff's claim.

## II. BACKGROUND

Taking the facts set forth in plaintiff's complaint as true, the pertinent allegations are as follows.[2] On January 5, 2010, plaintiff was in a Department of Corrections transport bus from Riker's to court with other inmates, when the driver made a sudden stop. Plaintiff alleges that prior to the stop, the bus driver was speeding. The stop caused plaintiff to hit his face on the seat in front of him while handcuffed to another inmate. Plaintiff alleges that as a result, his nose began bleeding and his head was hurt "causing sever[e] pain." Plaintiff informed an unnamed corrections officer of his condition, but the officer "refuse[d] to listen to [him] [or] . . . get [him] medical attention once" back at Riker's. Once back in the "return pen" at Riker's, plaintiff informed another corrections officer about the incident on the bus, but was told to "stop crying you'll be okay once you return to your housing area." Five hours later, the plaintiff then informed defendant corrections officer, Jacqueline Mitchel ("Mitchel") of his nose bleed and his "crazy pain," to which she replied that he would "be okay." Mitchel allegedly refused to call or get plaintiff medical attention.

The next morning, January 6, 2010, plaintiff informed corrections officer Givens, not a named defendant, about what happened the day prior. After informing her supervisor, Givens wrote up an "Injury to Inmate Report" consistent with plaintiff's report of the incident. As a result, plaintiff was sent to the clinic for emergency assistance.

---

[2] Plaintiff attaches numerous doctors' reports, grievance forms, and other documents to his complaint. In adjudicating a motion to dismiss pursuant to Rule 12(b)(6), the Court is "free to consider documents that are incorporated into the complaint by reference or attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting the complaint." Gryl ex rel. Shire Pharmaceuticals Grp. PLC v. Shire Pharmaceuticals Grp. PLC, 298 F.3d 136, 140 (2d Cir. 2002). The Court, therefore, treats facts set forth in plaintiff's attachments as allegations set forth in the complaint.

4

Ensuing events as reflected in plaintiff's complaint and attachments are internally contradictory. In his "Statement of Facts," plaintiff alleges that upon arrival at the clinic, defendant corrections officer, Hernando Brown ("Brown") "told me to go back to my housing area because I will not be seeing a doctor today," and plaintiff was then returned to the housing unit. Upon his return, plaintiff claims he informed the housing unit officer about Brown's actions and the officer then told plaintiff "to sign up for sick call." At this point, plaintiff claims he was "bleeding and was in serious pain." A Correctional Health Services ("CHS") doctor's Progress Note, attached to plaintiff's complaint, however, tells a different story. According to a January 6, 2010 Progress Note, plaintiff saw a doctor a little over an hour after plaintiff spoke to Givens. This doctor reported that plaintiff complained only of a weeklong rash and "denie[d] any other complaints." Plaintiff was prescribed hydrocortisone for the rash.

On the following day, January 7, 2010, plaintiff was seen by another doctor, who noted that while complaining of "nose pain" and "substantial trauma," a head, ears, eyes, nose, and throat ("HEENT") examination revealed only a "superficial scratch" and "localized tenderness" on plaintiff's nasal bridge. Moreover, an x-ray performed that day revealed "[n]o nasal bone fracture." The doctor did not report that the patient complained of or exhibited any evidence of a bloody nose or any other symptoms. No pain medication was prescribed.

Between January 18 and April 5, 2010, plaintiff was seen by multiple doctors, including a mental health expert and neurologist, on multiple occasions, the majority of which did not concern any symptoms relating to injuries arising from the bus incident.

On January 18, 2010, plaintiff complained to CHS of "frontal headache, sneezing, and nasal congestion." A HEENT examination revealed an "inflamed nasal mucosa" accompanied by

5

a "clear secretion," which the doctor diagnosed as an allergic condition. The doctor did not indicate that plaintiff complained of or exhibited any evidence of a bloody nose. On February 13, 2010, plaintiff saw another CHS doctor, complaining of a headache and a bloody nose. A HEENT examination revealed that there was "no active bleeding from nose [although the] left nasal passage showed evidence of recent bleed, [no] signs of trauma . . . [no] dizziness, mild nasal congestion." The doctor prescribed plaintiff with some pain medication, coated his left nasal passage with a thin film of Basitracin, and discharged plaintiff. On February 19, 2010, plaintiff was again at the clinic complaining of "cold symptoms" and "generalized muscle aches and pains," but denied any trauma. The doctor diagnosed "nasal congestion" and scheduled him for a follow up appointment.

On March 10, 2010, within a week after plaintiff filled out a "[CHS] Request for a Second Opinion" form, a CHS doctor examined plaintiff as part of an official "Chronic Care Follow Visit" to check on his progress since the January 5, 2010 accident. Although plaintiff noted that he had had "frontal region" headache issues since the accident, he noted that they occurred only every other week, lasted approximately half an hour at a time, and that the pain medication (Motrin) he was prescribed was providing him with relief. The doctor concluded that plaintiff was "presently asymptomatic," including a finding of "no active bleeding" from the nose or any current headache, continued his pain medication, and referred plaintiff to a neurologist. The subsequent neurology examination revealed normal nasal functioning and plaintiff was directed to continue Motrin as needed. After reassurances, plaintiff was discharged. CHS also officially responded in writing to plaintiff's request for a second opinion on March 26, 2010.

Plaintiff originally filed his complaint in the Eastern District of New York on July 7, 2010, ECF Docket # 1, and was granted leave to proceed *in forma pauperis* on August 5, 2010. ECF Docket # 4. After a proceeding before Magistrate Judge Ramon E. Reyes, plaintiff was granted leave to file "an amended complaint that names all defendants in the caption and body, and provides a full, detailed description of the facts and claims, and specifies each defendant's conduct that allegedly violated his constitutional rights." See 11/12/2010 Minute Entry for Proceedings held before Magistrate Judge Reyes. On December 10, 2010, plaintiff filed his Amended Complaint, which defendants, unopposed, moved to dismiss on April 18, 2011. ECF Docket # 13, 28.

### III. DISCUSSION

The Court may dismiss a complaint for "fail[ure] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding such a motion, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted); see also Fed. R. Civ. P. 10(c). "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotations omitted). As a result, "'*pro se* submissions must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (internal quotations omitted). A complaint must nevertheless plead a "plausible" claim for relief

to survive a motion to dismiss under Rule 12(b)(6). Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). Accepting all non-conclusory factual allegations as true, a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

A. Dismissal of Claims against New York City Agencies and Supervisory Officials

Plaintiff sues (1) New York City agencies: the Department of Corrections, Correctional Health Services, and "transportation;" (2) corrections officials: Dora Schriro, Commissioner of Corrections, and Robert Cripps, Warden of Riker's; and (3) individual corrections officers: Brown and Mitchel.

All of the named city agencies are non-suable agencies of the City of New York. See N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). Although plaintiff's claims against the city agencies are, therefore, dismissed, the Court will construe *pro se* plaintiff's complaint liberally to instead seek such relief from the City of New York.

Moreover, it is well settled that "[r]*espondeat superior* cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), and that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations omitted). A supervisory official may nevertheless be held liable under Section 1983 if "the defendant participated directly in the alleged constitutional violation [or] . . . created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of

8

such a policy or custom . . . ." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Although plaintiff names Commissioner Schriro and Warden Cripps as defendants in the caption of the complaint, plaintiff does not specifically allege their personal involvement or raise *any* claim, plausible or not, that their actions fall within any of the Colon exceptions. To the extent that plaintiff meant to bring a claim against these officials in their *official capacities*, such claims are merely duplicative of the claims against the City of New York, the "real party in interest." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Plaintiff's claims against the city agencies and supervisory officials are, therefore, dismissed.

B. Medical Indifference Claim

The Eighth Amendment proscribes "[d]eliberate indifference to serious medical needs of prisoners," Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal citations and quotations omitted), and "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). A constitutional violation may be found "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. To show medical indifference, "[s]ubjectively, the official charged . . . must act with a sufficiently culpable state of mind" and objectively, "the alleged deprivation must be sufficiently serious." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). The Second Circuit recently clarified that to satisfy the objective element, a plaintiff must allege both a "sufficiently serious" injury and an "actual[] depriv[ation] of adequate medical care." Salahuddin, 467 F.3d at 279. Plaintiff has failed to do both.

9

"[N]ot every lapse in medical care is a constitutional wrong." Id. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). In this case, plaintiff makes no allegation that his medical care and treatment by Riker's CHS doctors were in any way inadequate, nor could he based on plaintiff's own attached medical records. After the date of the accident, plaintiff was seen by a battery of physicians no less than twelve times in the span of less than three months. These physicians conducted full physical and neurological examinations, developed treatment plans, "educated" plaintiff about his symptoms, prescribed medication as needed, recorded progress at follow-up appointments, and responded promptly to a request for a second opinion. This level of medical attention is objectively adequate for *any* patient whether in or outside of prison.

To the extent plaintiff claims that any *delay* in treatment resulted in inadequate medical care, plaintiff's claim also fails. According to plaintiff's own proferred evidence, he was seen by a doctor within twenty-four hours of the incident and made no complaints then of any pain or discomfort other than a rash. See Hernandez v. Strack, No. 96 Civ. 417(DLC), 1997 WL 137439, at *1, 5 (S.D.N.Y. Mar. 25, 1997) (Cote, J.) (granting summary judgment where plaintiff's "sole allegation of neglect" was twenty-four-hour delay in being seen by doctor after surgery to repair one-half inch deep and eight-inches long wound to neck sustained in fight with other inmate); Alster v. Goord, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (Pauley, J.) (granting summary judgment where prison waited two days after complaints of abdominal pain to transport plaintiff to hospital and later failed to transport him to appointments). When plaintiff was next seen on January 7, 2010, two days following the incident, plaintiff complained only of localized nose pain and exhibited only a superficial scratch; there was no fracture. Over the course of the next

three months, at most, plaintiff's complaints amounted to relatively infrequent nose bleeds and intermittent headaches and other ailments unrelated to the accident. Plaintiff thus cannot show any "adverse medical effects or demonstrable physical injury" that resulted from what was in any case—at most—a two delay in treatment. Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003). To the contrary, plaintiff's "alleged lapses in treatment [we]re minor and inconsequential." Id. at 186. On these facts, Plaintiff alleges no more than the inconvenience all patients face "in receiving medical care, particularly when, [as in this case], their medical condition is not grave." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (McMahon, J.) (modification in original).

Plaintiff's claim thus also fails because he has not alleged a sufficiently serious injury. The standard for objective seriousness contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). Nonetheless, a plaintiff need not "demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor . . . show[] that his or her condition will degenerate into a life-threatening one." Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003). Plaintiff complained of and was diagnosed with no more than nose pain, intermittent headaches and nosebleeds, and superficial scratches. He did not fracture any bones. He did not lose consciousness. Courts in this circuit have found that similarly minor injuries fail to rise to the level of "sufficiently serious injury" to implicate the Eighth Amendment's protections.[3] See, e.g., Washington v. City of New

---

[3] For substantially the same reasons, plaintiff's claim fails to satisfy the subjective element of medical indifference. That is, the defendant corrections officers could not have "fail[ed] to act while actually aware of a substantial risk that serious inmate harm w[ould] result," quite simply because there *was no* "substantial risk that serious inmate harm w[ould] result." Salahuddin, 467 F.3d at 280. Because the only outward symptoms of plaintiff's injury were at most a "superficial scratch" on his nose and intermittent nose bleeds, the corrections officers could not have been "actually aware of an excessive risk to an inmate's health or safety." Caiozzo, 581 F.3d at 69.

York, No. 10 Civ. 389(LTS)(JLC), 2011 WL 566801 (S.D.N.Y. Feb. 15, 2011) (Swain, J.) (fractured nose, facial pain, "constant" nose bleeds and headaches); Fernandez v. Callens, No. 06-CV-0506(Sr), 2010 WL 4320362, at *8 (W.D.N.Y. Oct. 29, 2010) (Schroeder, J.) (nose pain, "small avulsion to his nose," and "small bruise" on nose bridge); Ramos v. Donahue, No. 01-CV-206F, 2007 WL 2874407, at *8 (W.D.N.Y. Sept. 27, 2007) (Foschio, M.J.) (small abrasion to nose and large reddened area above eye); Ford v. Phillips, No. 05 Civ. 6646(NRB), 2007 WL 946703, at *12 (S.D.N.Y. Mar. 27, 2007) (Buchwald, J.) (minor bruise on forehead, reddened abrasions on chest, abdomen, and right underarm, and superficial scratches on back); Qader v. New York, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005) (McMahon, J.) (dizziness and "terrible headache").

For the foregoing reasons, defendants' motion to dismiss plaintiff's medical indifference claim is granted as to the individual officers, Brown and Mitchel. Because plaintiff has failed to adequately allege that he suffered a "deprivation of [his] . . . rights under federal law," his claim against the City of New York must also be dismissed. Jones v. Town of East Haven, --- F.3d ----, 2012 WL 3104523, at *6 (2d Cir. Aug. 1, 2012) ("[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.") (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)).

C. Pendent Claims

Liberally construed, plaintiff's complaint could be read to allege claims under New York law. Because the Court has dismissed plaintiff's claims under federal law, any potential state law claims are dismissed without prejudice. United Mine Workers of America v. Gibbs, 383 U.S.

715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties."); see also 28 U.S.C. § 1367(c)(3).

D. Leave to Amend

A court generally should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotations omitted). Although Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend "should [be] freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), "justice does not so require if amendment would be futile." Xiang Li v. Morrisville State Coll., 434 F. App'x 34, 35 (2d Cir. 2011). An amendment is futile "if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (internal quotations omitted). In this case, plaintiff was already once provided with leave to amend by Magistrate Judge Reyes. There is no reason to believe that allowing plaintiff to amend a second time would alter the present result.

## IV. CONCLUSION

For all of the foregoing reasons, plaintiff's claim of medical indifference against all defendants and the City of New York is dismissed with prejudice. Plaintiff's pendent state law claims, to the extent they exist, are dismissed without prejudice.

SO ORDERED.

Dated: Brooklyn, New York
      September 27, 2012

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

13